UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARICK ANDERSON,

                Petitioner,                Case Number 11-CV-15531
                                                                Honorable Gershwin A. Drain

DEBRA SCUTT,

                Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS

This matter is before the Court on Petitioner Darick Anderson's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. On March 10, 2009, Petitioner was convicted in the Ottawa Circuit Court after a jury trial of two counts of first-degree premeditated murder, MICH. COMP. LAWS § 750.316(1), two counts of first-degree felony murder, MICH. COMP. LAWS § 750.316(1)(b), and one count of armed robbery, MICH. COMP. LAWS § 750.529. Petitioner was sentenced as a fourth time habitual felony offender to mandatory life imprisonment for the murder convictions, and 450-to-675 months for the armed robbery conviction. The petition claims that: (1) pretrial publicity rendered Petitioner's trial unfair; (2) the trial court and defense counsel failed to take action during Petitioner's outbursts during his testimony; (3) the trial court erroneously refused to instruct the jury on duress; (4) the trial court erroneously admitted prior bad acts evidence; (5) Petitioner's right to confrontation was denied by the admission of hearsay evidence from a non-testifying lab analyst; (6) Petitioner's trial was rendered unfair by the admission of prejudicial evidence regarding a personal protection order entered against him; and (7) Petitioner's warrantless arrest was illegal. The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The

Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the shooting deaths of Robert Karell and Louis Paparella during a robbery at R.K. Jewelers in Grand Haven on July 2, 2008. Also charged in the offense was defendant's brother, Dmitri Anderson. The two brothers were tried separately, with Dmitri being tried first. Defendant was connected to the crime by both direct and circumstantial evidence. Witness testimony established that defendant was away from his home during the timeframe in which the offense was committed. Defendant's fingerprint was found on a cigar box that Karell kept in a safe and used to store money. Items from the jewelry store were also discovered during a subsequent search of defendant's residence. In addition, a stack of $100 bills was stolen during the robbery and the police found an envelope containing $5,000 in $100 bills in the garage of defendant's residence, and DNA matching defendant's DNA was found on the envelope. Defendant, who was unemployed, also purchased two mopeds for $1,850 on the day after the offense, using $100 bills to pay for them. A firearm that was linked to the offense through ballistics testing was discovered buried in the ground at the house of defendant's relative. That weapon had been stolen from another house a few days before the jewelry store robbery and evidence was presented connecting defendant to that earlier break-in. At trial, defendant admitted that he buried the murder weapon after the offense. Defendant also admitted being present during the offense, but denied shooting the victims or knowing that a robbery was going to be committed. He refused to identify who committed the crime and shot the victims.

*People v. Anderson*, No. 292072, 2010 WL 3984801 (Mich. Ct. App. Oct. 12, 2010).

Following his conviction and sentencing, Petitioner filed an appeal of right. His appellate brief raised the same issues that he raises in the instant petition. The Michigan Court of Appeals affirmed in an unpublished opinion. *Id*. Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims, but it was denied by standard order. *People v.*

*Anderson*, 488 Mich. 1048 (2011) (table). Petitioner then filed his current application for habeas relief.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the

doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

**A. Pretrial Publicity**

Petitioner first claims that his trial was rendered fundamentally unfair by the prejudicial effects of pretrial publicity. Petitioner filed a motion for change of venue in the trial court on this basis, but he agreed to adjourn the hearing on the motion until the time of trial. The motion was never renewed. The Michigan Court of Appeals thereafter found that Petitioner failed to demonstrate that the pretrial publicity was extensive enough to overcome the presumption of juror impartiality.

In *Skilling v. United States*, 130 S.Ct. 2896 (2010), the Supreme Court reviewed the established federal law relating to claims of a denial of a right to a trial by an impartial jury by virtue of prejudicial pretrial publicity. The *Skilling* Court reiterated that "the theory of our trial system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Id.* at 2914 (quoting *Patterson v. Colorado ex rel. Attorney General of Colo.*, 205 U.S. 454, 462 (1907)). After describing *Rideau v. Louisiana*, 373 U.S. 723 (1963), *Estes v. Texas*, 381 U.S. 532 (1965), and *Sheppard v. Maxwell*, 384 U.S. 333 (1966), as cases where convictions had been overturned because the trial atmosphere "was utterly corrupted by press coverage," the Court indicated that those "decisions, however, 'cannot be made to stand for the proposition that juror exposure to ... news accounts of the crime ... alone presumptively deprives the defendant of due process.'" *Id.* at 2914 (quoting *Murphy v. Florida*, 421 U.S. 794, 798–99 (1974)). "The petitioner bears the burden of showing utter corruption of the proceedings." *Dobbert v. Florida*, 432 U.S. 282, 303 (1976). "Prominence does

not necessarily produce prejudice, and juror impartiality, we have reiterated, does not require ignorance." *Skilling*, 130 S.Ct. at 2914–15 (citing *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (emphasis in original). "A presumption of prejudice, our decisions indicate, attends only the extreme cases." *Skilling*, 130 S.Ct. at 2914–15. "Pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." *Id.* at 2916 (quoting *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 554 (1976)). "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut a presumption of a prospective juror's impartiality would be to establish an impossible standard." *Irvin*, 366 U.S. at 723. "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id*. A trial court's finding of impartiality as to a juror should not be set aside unless the error is manifest. *Id*. at 723–24. Where there is no presumed prejudice, a court looks next to whether actual prejudice infected the jury. *Id*. at 2917; *see also Ritchie v. Rogers*, 313 F.3d 948, 956 (6th Cir. 2002).

The state court did not unreasonably deny this claim. The evidence of pretrial publicity submitted by Petitioner to the state courts consisted of typical news reports related to the facts surrounding the crime. There is no evidence of a circus atmosphere occurring at trial. There is no evidence of a public outcry against Petitioner. And nothing in the news reports was designed to inflame or incite the passions of the public. During the jury voir dire, all of the jurors indicated that they had not formed an opinion regarding Petitioner's guilt, and they all indicated that they could disregard any stories they had heard about the case. The state courts acted well within the bounds of clearly established Supreme Court law in denying this claim. Petitioner's has therefore not demonstrated entitlement to habeas relief based on pretrial publicity.

**B. Petitioner's Outbursts at Trial**

Petitioner's second claim concerns incidents during his own direct examination testimony when he railed against this defense counsel, accusing him of being in league with the prosecutor. Petitioner claims that when his occurred the trial court had an obligation to conduct a competency hearing and appoint substitute counsel to represent him.

The state court's decision denying this claim is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The trial court acted within its discretion in denying Petitioner's requests as Petitioner's own poor conduct formed the basis for his motions. *See, e.g.*, *United States v. Williams*, 428 F. App'x 723, 725 (9th Cir. 2011) (ruling that trial court did not abuse its discretion in denying mistrial motion based upon defendant's own misconduct, which was so severe it required his removal); *United States v. Harris*, 2 F.3d 1452, 1456 (7th Cir. 1993) (affirming trial court's denial of mistrial motion following defendant's outburst because the defendant "should not profit from his outburst.").

In any event, Petitioner is not entitled to habeas relief based upon the trial judge's failure to appoint substitute counsel for him in the midst of trial. The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he or she will be represented by a particular attorney. *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989)). "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984). And the right to counsel of choice may not be used to unreasonably delay a trial. *See Linton v. Perini*, 656 F.2d 207, 209 (6th Cir. 1981).

"A defendant is required to show good cause for a request to substitute counsel and to do so in a timely manner." *See United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999). In determining whether a court abuses its discretion in denying a motion for substitute counsel, a reviewing court should consider the timeliness of the motion, the adequacy of the trial court's inquiry into the defendant's complaint, whether the conflict between the attorney and the client is so significant that it resulted in a total lack of communication which prevented an adequate defense, and a balancing of these factors with "the public's interest in the prompt and efficient administration of justice." *Id.* (citing *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996)).

Here, Petitioner's request for substitute counsel — made in the midst of trial after the prosecutor had rested — was untimely. The trial court judge could have simply denied Petitioner's request for substitute counsel for that reason alone. *United States v. Sullivan*, 431 F.3d 976, 980 (6th Cir. 2005). In fact, however, Petitioner's complaints were unfounded. A fair reading of the trial record shows that his counsel was performing competently and ably presented Petitioner's defense that his brother was the perpetrator of the crime, and that Petitioner had no prior knowledge about his brother's plans. Interspersed with his outbursts, Petitioner also testified to his own exculpatory version of the events. When it appeared to counsel that Petitioner was doing more harm than good for his own defense, counsel attempted to reign Petitioner in and finally was able to convince Petitioner to end his testimony. The state court's conclusion that Petitioner had not shown good cause for substitute counsel is therefore reasonably supported by the trial record.

With respect to the trial court's failure to sua sponte adjourn the case for a competency evaluation, the record also supports the state court's conclusion that no such evaluation was warranted. "The constitutional test is whether the accused 'has sufficient present ability to consult

with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *Williams v. Bordenkircher*, 696 F.2d 464, 466 (6th Cir. 1983) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)); *see also* 18 U.S.C. § 4241 ("The court shall grant [a motion to determine a defendant's competency], or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent.").

A court must conduct a competency hearing when there is information known to the court sufficient to raise doubts about a defendant's competency. *See Pate v. Robinson*, 383 U.S. 375, 385 (1966); *United States v. White*, 887 F.2d 705, 709 (6th Cir. 1989). "In determining a defendant's competence, courts consider several factors, such as 'evidence of a defendant's irrational behavior, [the defendant's] demeanor at trial, and any prior medical opinion on competence to stand trial.'" *United States v. Miller*, 531 F.3d 340, 348 (6th Cir. 2008) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). A trial court's determination of competency is a factual finding entitled to a presumption of correctness, and can only be refuted by clear and convincing evidence. *Mackey v. Dutton*, 217 F.3d 399, 411, 413 (6th Cir. 2000).

Nothing about Petitioner's rant indicated that he was not competent to stand trial. Certainly, Petitioner was upset by the way the trial seemed to be progressing, and he decided to express this by accusing his counsel of misconduct. But nothing he said indicated that he did not understand the nature of the proceedings against him or cause doubt about his ability to communicate with counsel. Petitioner may not have desired to communicate constructively with counsel, but nothing in the record suggests that he did not have the ability to do so. Accordingly, the rejection of this claim by the state court was also reasonable.

### C. Failure to Instruct Jury on Duress

Petitioner asserts that the trial court erred in failing to instruct the jury on the defense of duress. Petitioner stated that he went along with his brother during the shooting because he feared that his brother would kill him if he did not cooperate. The Michigan Court of Appeals found, as a matter of state law, Petitioner was not entitled to a duress defense to the crime of murder.

Under Michigan law, duress is not a defense to murder or other criminal activity that leads to a person's death. *See, e.g.*, *People v. Moseler*, 202 Mich. App. 296, 299 (1993) (duress not a defense to involuntary manslaughter); *People v. Etheridge*, 196 Mich. App. 43, 56 (1992) (duress defense not available in case where defendant charged with both premeditated and felony murder); *People v. Travis*, 182 Mich. App. 389, 392 (1990) (duress not a defense to homicide); *see also Gimotty v. Elo*, 40 F. App'x 29, 32-33 (6th Cir. 2002) (duress not a defense to felony murder).

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). As a result, the state court's determination about the inapplicability of the defense of duress to the facts of Petitioner's case is not subject to habeas review in this Court. Petitioner has not cited to any constitutional entitlement to have the jury instructed on the defense of duress solely on the basis of Petitioner's claim that he was subjected to coercion, even coercion implicating personal risks. Accordingly, the state court's determination that Petitioner was not entitled to a jury instruction on the defense of duress is not reviewable by this Court.

### D. Prior Bad Acts Evidence

Petitioner next argues that the trial court erred by allowing the prosecutor to admit evidence

-10-

of two prior home invasions. One prior home invasion involved the theft of the handgun used in the murder two days prior to the shooting. The second home invasion occurred within hours of the first one, and involved the theft of jewelry later recovered from Petitioner's residence. The prosecutor's theory was that the same person committed both home invasions, and that person was therefore the one who obtained the gun used in the murder.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle*, *supra*. A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id*. Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000); *see also Gross v. Warden, Lebanon Correctional Inst.*, 426 Fed. Appx. 349, 362, n. 5 (6th Cir. 2011).

Petitioner's claim that the state court violated M.R.E. 404(b) or any other provision of state law by admitting evidence of his prior home invasions is non-cognizable on habeas review. *See Bey v. Bagley*, 500 F 3d 514, 519 (6th Cir. 2007); *Estelle*, 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990) (admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due

-11-

process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003); *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by the admission of evidence to establish the petitioner's propensity to commit criminal acts, the Michigan Court of Appeals' rejection of Petitioner's first and second claims was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

**E. Admission of Hearsay by Lab Tech**

Petitioner next claims that his confrontation rights were violated by the admission of evidence that his DNA was discovered on a rag found in the garage where items of jewelry were stolen, and near the home where the gun used in the murder was stolen. Kate Dozeman, a laboratory analyst testified to the DNA evidence, but another analyst had performed the testing on the rag. The Michigan Court of Appeals found that Petitioner's confrontation rights were therefore violated, but it found that any error was harmless.

In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the Court held that a forensic laboratory report, created specifically to serve as evidence in a criminal proceeding, constituted testimonial hearsay for Confrontation Clause purposes, and that such a report may not be introduced without the prosecution offering a live witness competent to testify to the truth of the report's statements. *See Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2709 (2011). In *Bullcoming* the Court clarified that under *Melendez-Diaz*, the prosecution may not present "surrogate" testimony by an analyst that did not sign the report or observe or perform the tests reflected in the report; rather,

"[t]he accused's right is to be confronted with the analyst who made the certification." *Bullcoming*, 131 S. Ct. at 2710. The analyst who performed the testing did not testify at Petitioner's trial. Accordingly, the state courts correctly determined that the hearsay identifying the DNA found on the rag as belonging to Petitioner was improperly admitted.

Nonetheless, a violation of the Confrontation Clause can be harmless error. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). In a habeas proceeding, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

The DNA test at issue indirectly connected Petitioner to the murder weapon. The rag was found in the garage of a home from which various pieces of jewelry were stolen near in time and location to another home invasion from which the murder weapon was stolen. The prosecutor's theory was that the same man committed both home invasions. Therefore, the fact that Petitioner's DNA was found in one of the home's helped to connect him to the murder weapon. However, the DNA evidence was far from the only evidence connecting Petitioner to the home invasions. Most pointedly, pieces of jewelry stolen from the home were later found in Petitioner's home - also directly linking him to that home invasion. Moreover, Petitioner admitted to police that he buried the murder weapon, tying him to the weapon independently from the home invasions.

Setting aside the evidence tying Petitioner to the murder weapon, there was other compelling evidence of his guilt. Petitioner's fingerprint was found on the cigar box that had contained the cash stolen from the jewelry store. The box was found laying on the floor in the store after the robbery. Jewelry stolen from the store was found in Petitioner's residence. Petitioner's DNA was found on an envelope in his girlfriend's basement that contained $5,000 in $100 bills. Petitioner's uncle

described a conversation he had with Petitioner and his brother in which a robbery of the jewelry store was eluded to. During the conversation, Petitioner stated that if he committed such a robbery he would know how to "lay down," that is kill, the victims. Petitioner also had a conversation with his other brother, Augustus Butts, describing how–in theory–he would commit a robbery and shoot the victim right after he opened the safe. This description jibed with the position in which the jewelry store owner's body was found. The day after the murders, Petitioner–who was unemployed–paid cash for the purchase of two mopeds. The seller saw that Petitioner had a large wad of cash. While in jail, Petitioner wrote a letter admitting that he was present during the shooting, but tried to blame his brother. Bullet casings from the murder weapon were found in a garbage bag located in Petitioner's girlfriend's father's house. The murder weapon was found buried behind the house Petitioner stayed at two days after the murders. Other items stolen from the house from which the murder weapon was stolen were also found in Petitioner's house, including a roll of coins, a knife, and a stereo. Petitioner had even written his name on the roll of coins.

In other words, the evidence of Petitioner's guilt was quite weighty. Although the DNA on the rag helped indirectly connect him to the murder weapon, it did not have a substantial impact on the outcome of the trial. He would have been convicted without it. Accordingly, Petitioner is not entitled to habeas relief based on this claim.

**F. PPO Evidence**

Petitioner asserts that testimony by Herkie Jewell that there was a personal protection order against Petitioner was unfairly prejudicial. During his testimony, Jewell described driving Petitioner and his brother to city hall, and stated that he gave them a ride because Petitioner had to deal with

a personal protection order.

To the extent that Petitioner contends that evidence of the prior bad acts should have been excluded under M.R.E. 403 for being more prejudicial than probative, he is not entitled to habeas relief. Appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002). Although the reason for the trip to city hall was largely irrelevant, this brief reference certainly did not raise to an error of constitutional dimensions. It had no determination on the outcome of the trial. "An error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)).

## G. Warrantless Arrest

Petitioner's final claim asserts that he is entitled to habeas relief based upon an alleged violation of the Fourth Amendment. Specifically, he asserts that the police did not have probable cause to arrest him, and that evidence obtained as a result of the illegal arrest should have been suppressed.

Federal courts will not address a Fourth Amendment claim on habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976). A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action. First, the "court must determine

whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to suppress, ordinarily filed before trial. *See People v. Ferguson*, 376 Mich. 90, 93-94 (1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 95 Mich. App. 507, 509 (1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal). Consequently, Petitioner is entitled to relief on this issue only if he establishes that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.

Petitioner has not done so. The record reveals that Petitioner challenged the propriety of his arrest under the Fourth Amendment by raising the issue in a supplemental brief filed in the Michigan Court of Appeals during his direct appeal. The Michigan Court of Appeals denied relief on the merits. Consequently, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment claim and that he received all the process he was due. Accordingly, his claim challenging the validity of his arrest is not cognizable on habeas review pursuant to *Stone v. Powell*. Habeas relief is not warranted.

Petitioner also asserts that his counsel was ineffective for failing to raise his Fourth Amendment challenge in the trial court. A habeas petitioner may base an ineffective assistance of counsel claim on an assertion that trial counsel failed to properly litigate a Fourth Amendment issue.

See *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). To obtain relief on such a claim, the petitioner must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence" in order to demonstrate actual prejudice. *Id.*; *see also Joshua v. DeWitt*, 341 F.3d 430, 437-38 (6th Cir. 2003). The record shows that the police had a warrant to search his home. Even if Petitioner's arrest was illegal, the items seized from his home pursuant to the search warrant were not suppressible fruits of the arrest. Because such a suppression motion would have failed, and given the significant properly-admitted evidence of guilt presented at trial, Petitioner cannot establish that trial counsel erred or that he was prejudice by counsel's conduct. *See, e.g.*, *Martin v. Mitchell*, 280 F.3d 594, 607 (6th Cir. 2002) (denying habeas relief on similar claim).

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims.

*Id*. at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.

                                                s/ Gershwin A. Drain
                                                Honorable Gershwin A. Drain
                                                United States District Judge

Dated: <u>July 30, 2013</u>